1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   STATE OF CALIFORNIA, acting by and          No. 2:13-cv-02069-KJM-DAD
     through the CALIFORNIA
12   DEPARTMENT OF
     TRANSPORTATION; and
13   SACRAMENTO REGIONAL TRANSIT                  ORDER
     DISTRICT,
14
                 Plaintiffs,
15
          v.
16
     UNITED STATES DEPARTMENT OF
17   LABOR; and THOMAS E. PEREZ, in his
     official capacity as SECRETARY OF
18   LABOR,

19               Defendants.

20

21          This matter is before the court on plaintiffs' motion to supplement the

22   administrative record and for limited discovery.  (ECF No. 18.)  Specifically, plaintiffs ask the

23   court to supplement the administrative record with documents that, plaintiffs assert, support their

24   claim in this action brought under the Administrative Procedure Act (APA).  Plaintiffs claim that

25   the U.S. Department of Labor's decision refusing to certify various grants of federal funds for

26   local transit projects because it determined California's Public Employee Pension Reform Act of

27   2013 ("PEPRA") undermines collective bargaining rights of transit employees was arbitrary and

28   capricious in violation of 5 U.S.C. § 706 of the APA.  Defendants oppose the inclusion of most of

                                              1

1    plaintiffs' documents, but do not oppose the admission of some.  The court heard oral argument

2    on plaintiffs' motion on February 14, 2014.  Stephen B. Higgins and Kathleen E. Kraft appeared

3    for plaintiffs, and Susan K. Ullman appeared for defendants.  As discussed at the hearing, the

4    parties filed a joint report listing the specific documents plaintiffs request and defendants'

5    position in response.  (ECF No. 34.)  For the following reasons, plaintiffs' motion is GRANTED

6    IN PART and DENIED IN PART.

7    I.    BACKGROUND

8         This case is about a dispute between the U.S. Department of Labor ("the DOL"),

9    a federal agency tasked by Congress to protect the collective bargaining rights of workers, and

10   California transit agencies, over California's recently enacted statute known as PEPRA, designed

11   to reform California's public-employee pension system.  Through plaintiffs' motion to

12   supplement the administrative record, plaintiffs ask the court to consider documents outside the

13   record to support plaintiffs' APA challenge.  To frame the analysis of plaintiffs' pending motion,

14   it is necessary to briefly summarize the underlying dispute.

15        A.    Section 13 of the Urban Mass Transit Act

16        An employer who receives federal funds for an urban mass transportation project

17   must first receive certification from the DOL that the federally funded transit project preserves

18   and continues the collective bargaining rights of employees.  This process is known as "Section

19   13 certification."  Specifically, section 13(c) of the Urban Mass Transportation Act of 1964, 49

20   U.S.C. § 5333(b) (UMTA), provides that before federal funds may be awarded to a state or

21   locally owned transit system the DOL must first conclude the "arrangements . . . are fair and

22   equitable" to "the interests of employees affected" by the federal funds.  *Amalgamated Transit*

23   *Union Int'l, AFL–CIO v. Donovan*, 767 F.2d 939, 940 n.1 (D.C. Cir. 1984).  Thus, the Federal

24   Transit Administration ("the FTA") cannot award federal funds to a state or local transportation

25   agency for a particular transit project unless and until the DOL certifies the labor arrangement

26   does not undermine "the continuation of collective bargaining rights," and the proposal

27   "preserv[es] . . . [the] rights, privileges, and benefits (including continuation of pension rights and

28   /////

2

1    benefits) under existing collective bargaining agreements or otherwise." 49 U.S.C.

2    § 5333(b)(2)(A), (B).

3         B.    California's Public Employees' Pension Reform Act of 2013 ("PEPRA")

4              In 2012, California's Governor signed the PEPRA into law "to reform California's

5    public employee pension systems and to bring the staggering cost of funding such systems under

6    fiscal control." (Compl. ¶ 6, ECF No. 1.) Under PEPRA, new employees must contribute at least

7    50 percent of the normal costs of their defined benefit plan, and PEPRA establishes a cap on the

8    amount of compensation that can be used to calculate a retirement benefit (among other reforms).

9    *See* CAL. GOV'T CODE §§ 7522.30(a), 7522.10(c).

10        C.    Procedural History

11             In September 2012, plaintiffs Sacramento Regional Transit District ("SacRT") and

12   California Department of Transportation ("CalTrans"), applied for funds from the FTA to fund

13   two projects: Phase 2 of the South Sacramento Corridor Light Rail Extension Project and the

14   Monterey–Salinas Transit Mobility Project. In December 2012, the Amalgamated Transit Union

15   ("ATU") filed objections to Section 13 certification with the DOL, arguing PEPRA "require[s]

16   participating employers to unilaterally implement changes to retirement benefits without first

17   bargaining with their employee representative(s)." (Administrative Record ("A.R.") 212, ECF

18   No. 9-2.) The DOL then informed plaintiffs that ATU's objections precluded immediate

19   certification, and asked that ATU and plaintiffs negotiate. After negotiations between plaintiffs

20   and ATU did not result in agreement, in April 2013, the DOL set a briefing schedule on whether

21   PEPRA precluded Section 13(c) certification.

22             In September 2013, the DOL refused to grant Section 13(c) certification. The

23   DOL concluded "PEPRA makes significant changes to pension benefits that are inconsistent with

24   section 13(c)(1)'s mandate to preserve pension benefits under existing collective bargaining

25   agreements and section 13(c)(2)'s mandate to ensure continuation of collective bargaining

26   rights." (Compl., Ex. A, 2, ECF No. 1.) Accordingly, the FTA denied plaintiffs' two grant

27   applications.

28   /////

1    Through this action, plaintiffs challenge the decisions of the DOL, denying Section

2    13 certification and withholding federal funds, on several grounds.  Importantly for the pending

3    motion, plaintiffs assert the decisions were arbitrary and capricious, in violation of § 706(2)(A) of

4    the APA, were in excess of DOL's statutory authority in violation of § 706(2)(C), and DOL

5    prejudged the issues and exhibited bias in violation of due process.

6    Defendants have lodged the administrative record with the court.  (ECF Nos. 9-2,

7    9-3, 9-4, 9-5.)  Therein, the Custodian of Records for the DOL's Office of Labor Management

8    Standards certified the administrative record:

> Pursuant to 5 U.S.C. § 706, I hereby certify to the best of my
> knowledge and belief that the documents annexed hereto constitute
> a true and correct copy of the administrative record related to the
> proceedings at issue in the above-captioned case.   Privileged
> documents, including those reflecting internal agency deliberations,
> are not part of this administrative record.

13   (ECF No. 9-2.)

14   As noted, the parties have filed a joint report identifying the documents the parties

15   dispute or agree should be added to the administrative record.  (ECF No. 34.)

16   Defendants have also filed a motion to dismiss, or, in the alternative, for summary

17   adjudication (ECF No. 9-1), which the court will decide after ruling on plaintiffs' motion to

18   supplement the administrative record.

19   II.    STANDARD

20   In evaluating a challenge to agency action, the APA directs courts "to review the

21   whole record or those parts of it cited by a party."  5 U.S.C. § 706(2)(F).  Thus, the court must

22   review "the full administrative record that was before the [agency] at the time [it made its]

23   decision." *Citizens to Preserve Overton Park v. Volpe* (*Overton Park*), 401 U.S. 402, 420 (1971),

24   *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).  "[T]he focal point for

25   judicial review should be the administrative record already in existence, not some new record

26   made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

27   "[T]he general rule [is] that review of agency action is limited to the administrative

28   record." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1438 (9th Cir. 1988), *amended*, 867 F.2d

4

1244 (9th Cir. 1989).  Supplementation of the administrative record "decidedly is the exception

not the rule."  *Motor & Equip. Mfrs. Ass'n, Inc. v. EPA*, 627 F.2d 1095, 1104 n.18 (D.C. Cir.

1979).  Thus, federal "district courts are permitted to admit extra-record evidence" only in the

following "limited circumstances":

> (1)  if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision,"
>
> (2)  if "the agency has relied on documents not in the record,"
>
> (3)  "when supplementing the record is necessary to explain technical terms or complex subject matter," or
>
> (4)  "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological*

*Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).  "These limited exceptions

operate to identify and plug holes in the administrative record," and "are narrowly construed and

applied."  *Id.* (citing *Camp*, 411 U.S. at 142–43).

   As the Ninth Circuit explains, "[t]he scope of these exceptions permitted by our

precedent is constrained, so that the exception does not undermine the general rule."  *Id.*  "Were

the federal courts routinely or liberally to admit new evidence when reviewing agency decisions,

it would be obvious that the federal courts would be proceeding, in effect, *de novo* rather than

with the proper deference to agency processes, expertise, and decision-making."  *Id.*

III.   ANALYSIS

   A.   Parties' Positions

   Plaintiffs seek admission of various categories of documents to supplement the

certified administrative record.  Specifically, plaintiffs seek admission of correspondence

addressing the impact of PEPRA on Section 13(c) certification of separate transit projects

(including projects in Los Angeles and Orange Counties), certain electronic correspondence

pertaining to the challenged decisions, documents pertaining to other Section 13(c) disputes in

other states that enacted new public pension reform laws (Ohio, Massachusetts, and New Jersey),

and internal agency memoranda.  Plaintiffs also request defendants provide a privilege log, and

1    that the court grant plaintiffs leave to conduct discovery.  Plaintiffs argue their requests are

2    warranted because the administrative record submitted by the agency does not include these items

3    and they "have reasonable, non-speculative grounds to support their belief that Defendants

4    considered the[se] [items] in reaching the challenged decisions."  (Mot. to Supplement A.R. 9:16–

5    20, ECF No. 18-1.)  Plaintiffs also contend the "documents that Plaintiffs have identified rebut

6    any presumption of regularity that would typically be afforded to the Record," because these

7    documents evince the "importance of the PEPRA-13(c) issue and the appearance that the

8    challenged decisions may have been affected by partisan considerations."  (*Id.* at 12:7–11.)

9              Defendants oppose the admission of most of the documents plaintiffs identify.

10   Defendants counter the admission of documents pertaining to the Los Angeles and Orange

11   County transit projects and Section 13(c) certification in other states indicate, at most, the DOL

12   was "grappling with similar issues" in other locations, not that it "pre-judged the decisions"

13   challenged in this case.  (Opp'n 8, ECF No. 24.)  The other documents, defendants argue, should

14   not be admitted because they were not before the agency at the time it made the decisions to deny

15   Section 13(c) certification.  Defendants argue plaintiffs have not met their burden for seeking

16   discovery because plaintiffs "do not identify a 'relevant factor' that DOL did not consider, . . . nor

17   do they make a showing of agency bad faith."  (*Id.* at 14:25–15:7.)  Further, defendants argue

18   internal agency memoranda are properly excluded from the administrative record, citing *Portland*

19   *Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993) (reasoning

20   documents that "concern . . . the internal deliberative processes of the agency" are properly

21   excluded from the administrative record).  Defendants also argue the agency need not provide a

22   privilege log under *Cook Inletkeeper v. U.S. E.P.A.*, 400 F. App'x 239, 240 (9th Cir. 2010)

23   (denying the petitioners' "motion to require preparation of a privilege log.").  Finally, defendants

24   do not oppose the admission of correspondence between political officials: (1) a letter from

25   California Governor Brown to then-acting Secretary of Labor Harris, (2) a letter from Governor

26   Brown to President of the United States, Barack Obama, and (3) a letter from defendant,

27   Secretary of Labor Thomas E. Perez, to Governor Brown.  While defendants contest plaintiffs'

28   characterization that "because public officials exchanged public correspondence regarding

1   PEPRA, the DOL decisions . . . were somehow justified by partisan considerations," defendants

2   agree to include the letters because they "relate, at least tangentially, to the administrative

3   decisions that are before this Court."  (Opp'n 6:28–7:2, 9:2–7, ECF No. 24.)

4          B.      Legal Standard

5                  An agency's certification of the administrative record is entitled to a "strong

6   presumption" of regularity.  *Deukmejian v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1329

7   (D.C. Cir. 1984), *aff'd on reh'g en banc sub nom.*, *San Luis Obispo Mothers for Peace v. U.S.*

8   *Nuclear Regulatory Comm'n*, 789 F.2d 26 (D.C. Cir. 1986); *accord McCrary v. Gutierrez*, 495 F.

9   Supp. 2d 1038, 1041 (N.D. Cal. 2007) ("An agency's designation and certification of the

10  administrative record is treated like other established administrative procedures, and thus entitled

11  to a presumption of administrative regularity." (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735,

12  740 (10th Cir. 1993))).  "Common sense dictates that the agency determines what constitutes the

13  'whole' administrative record because 'it is the agency that did the "considering," and that

14  therefore is in a position to indicate initially which of the materials were "before" it—namely,

15  were "directly or indirectly considered."'"  *Pac. Shores Subdivision, Cal. Water Dist. v. U.S.*

16  *Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal alteration omitted) (quoting

17  *Fund for Animals v. Williams*, 245 F. Supp. 2d 49, 57 (D.D.C. 2003)).

18                 To rebut the presumption of regularity, plaintiffs "must put forth concrete evidence

19  to show that the record" is incomplete.  *Pac. Shores*, 448 F. Supp. 2d at 6.  Plaintiffs cannot meet

20  their burden "simply by asserting that the documents are relevant, were before or in front of the

21  [agency] at the time it made its decision, and were inadequately considered"; instead, plaintiffs

22  "must identify reasonable, non-speculative grounds for [their] belief that the documents were

23  considered by the agency and not included in the record."  *Id.*  Moreover, plaintiffs "must identify

24  the materials allegedly omitted from the record with sufficient specificity, as opposed to merely

25  proffering broad categories of documents and data that are 'likely' to exist as a result of other

26  documents that are included in the administrative record."  *City of Duluth v. Jewell*, No. 12-cv-

27  1116, __ F. Supp. 2d __, 2013 WL 5422453, at *5 (D.D.C. Sept. 29, 2013).

28  /////

C.      Categories of Documents

With these principles in mind, the court turns its attention to the specific items plaintiffs request be admitted by the court to supplement the certified administrative record.

1.      Documents Pertaining to Other Pending Section 13(c) Disputes in California Involving PEPRA

Plaintiffs seek admission of correspondence addressing the impact of PEPRA on Section 13(c) certification for all California transit agencies.  Plaintiffs argue this correspondence "address[es] the subject matter at issue in the challenged agency action."  (Mot. to Supplement A.R. 6:8–10, ECF No. 18-1.)  Specifically, plaintiffs seek admission of the following five items:

1.  An October 12, 2012, letter from special counsel for ATU to California Transit Association; officials at the DOL were copied.  (Decl. Kraft, Ex. B, ECF No. 18-4.)  This letter appears to reflect the union's desire to reach a negotiated settlement.

2.  A February 13, 2013, letter from Los Angeles County Counsel to the DOL.  (Decl. Kraft, Ex. C, ECF No. 18-5.)  This letter reflects the Los Angeles County Counsel's opinion that PEPRA does not violate Section 13(c) with respect to Los Angeles County's federal grant applications.

3.  An April 3, 2013, letter from San Diego Metropolitan Transit System to the Acting Director of the Office of Labor Management Standards.  (Decl. Kraft, Ex. F, ECF No. 18-8.) This letter requests the DOL consider the impact on transit-system patrons and employees in deciding the Section 13(c) issue.

4.  A May 23, 2013, letter from San Diego Metropolitan Transit System to the then-Acting Director of the Office of Labor Management Standards.  (Decl. Kraft, Ex. G, ECF No. 18-9.)

5.  Correspondence concerning the San Diego Metropolitan Transit System's grant application.  ((Decl. Kraft, Ex. K, at 9–26, ECF No. 18-13.)[1]

(*Id.* at 6:22–7:13, 9:2–5.)[2]  Plaintiffs argue these items should be admitted under the Ninth Circuit's decision in *Thompson v. U.S. Department of Labor*, 885 F.2d 551 (9th Cir. 1989); they

/////

_____

[1] In the Joint Statement filed after the hearing, defendants do not oppose the admission of the first eight pages of Exhibit K.  Therefore, the first eight pages will be admitted.

[2] Plaintiffs also seek the admission of various other correspondence concerning PEPRA that defendants do not oppose.  The admission of these items is discussed below.

also cite *Sierra Pacific Industries v. U.S. Department of Agriculture*, No. 2:11-cv-1250 KJM EFB, 2011 WL 6749837 (E.D. Cal. Dec. 22, 2011).

Defendants oppose admission of these documents, arguing plaintiffs' "view of the 'subject matter at issue in this case' is far too broad."  (Opp'n 9:12–15, ECF No. 24.)  Defendants argue that Los Angeles County, for example, is not a party to this suit and its letter to the DOL was not part of what the agency relied on.  (*Id.* at 5:19–23.)  Defendants argue the relevant portions of this correspondence have already "been included in the Administrative Record, and indeed that written correspondence accounts for over one thousand pages of that record."  (*Id.* at 9:17–19 (citing A.R. 1–1268).)  Moreover, defendants argue plaintiffs "do not explain why the substance of . . . this correspondence . . . warrant[s] supplementing a record."  (*Id.* at 9:26–28.)

Under *Thompson*, if an agency decision maker is made aware of correspondence concerning settlement negotiations of a dispute before the agency, then that correspondence may be properly admitted to supplement the administrative record in determining whether the agency's decision was arbitrary and capricious.  885 F.2d at 551.  In *Thompson*, the complaining employee claimed he was fired in retaliation for "whistleblower" activities in violation of federal law, and the DOL's administrative law judge (ALJ) was copied on correspondence concerning settlement negotiations between Thompson and his employer.  *Id.* at 553-554.  In that correspondence, the employer and employee discussed whether the dismissal of the employee's claims would be with or without prejudice.  After the parties reached a settlement and agreed dismissal would be without prejudice, the ALJ recommended the Secretary of Labor approve the settlement agreement without prejudice.  The Secretary approved the settlement; however, the Secretary also added that the "case was dismissed *with prejudice*."  *Id.* at 554 (emphasis in original).  In addressing Thompson's challenge to the Secretary's decision under the APA, the Ninth Circuit held "this court can consider these letters in determining whether the Secretary's decision was 'arbitrary and capricious' . . . ."  *Id.* at 556.  The court reasoned: "The correspondence was sent to the ALJ, who, at the very least indirectly considered the settlement negotiations when he approved the recommended order that was silent as to the mode of dismissal."  *Id.* at 555.

Here, as in *Thompson*, the court finds the correspondence concerning statewide settlement negotiations between the ATU as the union and state transportation representatives was "at the very least indirectly considered" by the DOL and may therefore be considered by this court in determining whether the Section 13(c) denial was "arbitrary and capricious." 553 F.2d at 555–56. The Secretary of Labor himself, in a letter to California Governor Brown, said the DOL would postpone a determination on Section 13(c) certification of a proposed transit project in the "hope that this additional time will provide an opportunity for your state to work out a possible resolution, as other states have done." (Decl. Kraft, Ex. I, at 2, ECF No. 18-11.)[3] In a preceding paragraph, the Secretary said the DOL brought the "parties together to see if they could find a negotiated solution," apparently referring to settlement negotiations. (*Id.*) And in another portion of the letter, the Secretary referred to other states that "all passed laws that reformed the collective bargaining process, but in each case the transit agency, unions[,] and the state came up with solutions in order to avoid a conflict with Section 13(c)," including negotiated settlements. (*Id.* at 1.)

The court finds the correspondence between California transportation groups and transit unions related to settlement negotiations and concludes the letter should be admitted to supplement the administrative record under *Thompson*. *See also Sierra Pac. Indus.*, 2011 WL 6749837, at *2 ("Because the three letters on which [an agency attorney] was copied address the subject matter at issue in this case and were before the decision-making agency, plaintiff's motion [to supplement the administrative record] is granted with respect to this correspondence.").[4] Therefore, because the October 12, 2012, letter from special counsel for ATU to California

---

[3] Defendants do not oppose the admission of this letter; it is admitted.

[4] Plaintiffs point to language from this court's prior decision in *Sierra Pacific Industries* for the broad proposition that if an agency official was "copied" on correspondence that "addressed that subject matter at issue in this case," the correspondence was therefore "before the decision-making agency." (Mot. to Supplement A.R. 6:8–8:5, ECF No. 18-1 (quoting *Sierra Pac. Indus.*, 2011 WL 6749837, at *4).) The decision in *Sierra Pacific Industries*, however, is limited to the facts of that case. There, correspondence was sent from a U.S. Attorney to the plaintiffs' counsel, and a U.S. Department of Agriculture official was copied; presumably, the U.S. Department of Agriculture official would rely on the advice of a U.S. Attorney in that matter regarding the issue addressed by the correspondence -- whether Agriculture would allow its employees to be deposed -- , *Sierra Pac. Indus.*, 2011 WL 6749837, at *2, *4, a different scenario from that in this case.

10

1    Transit Association concerns settlement negotiations as in *Thompson*, (Decl. Kraft, Ex. B, ECF

2    No. 18-4), plaintiffs' motion is GRANTED with respect to this correspondence.

3            The court finds the other correspondence was unrelated to settlement negotiations,

4    but instead pertained to DOL decisions not challenged here.  The other documents plaintiffs ask

5    be admitted are opinion letters written by attorneys for municipal transit agencies in San Diego

6    and Los Angeles concerning separate federal grant applications.  These letters also ask the DOL

7    to consider the significant potential impact on the municipality when deciding Section 13(c)

8    certification for their transit projects.  Because plaintiffs have not adequately explained or pointed

9    to evidence these letters were "directly or indirectly considered by agency decision-makers"

10    regarding the agency's decisions on the Sacramento and Monterey–Salinas transit grant

11    applications at issue in this litigation, *Thompson*, 885 F.2d at 555 (alteration omitted), this portion

12    of plaintiffs' motion is DENIED as to Exhibits 'C,' 'F,' and 'G.'

13            Plaintiffs' requests that the court admit materials related to grant proposals from

14    San Diego, Orange County, and Los Angeles are similarly unavailing.  Plaintiffs assert in a

15    conclusory manner that "DOL's determination of the PEPRA/13(c) issue, although ultimately

16    manifesting itself in just four grant denials, consisted of a broad review and analysis of the

17    general impact of PEPRA . . . . informed by more than briefs submitted by SacRT and its

18    employee unions."  (Reply 4:21–25, ECF No. 28.)  This assertion, however, is not supported by

19    concrete evidence that these items were directly or indirectly considered by the agency.

20    Plaintiffs' position also misconstrues the court's role under the APA.  Ultimately, the court will

21    look to the record provided by the DOL to determine whether its decision was reasonable, or

22    instead, "arbitrary and capricious."  Presumably, the agency has every incentive to provide as

23    much support as it can for its decision.  *Cf. Pac. Shores*, 448 F. Supp. 2d at 5 ("Common sense

24    dictates that the agency determines what constitutes the 'whole' administrative record because 'it

25    is the agency that did the "considering," and that therefore is in a position to indicate initially

26    which of the materials were "before" it and were "directly or indirectly considered."'" (quoting

27    *Fund for Animals*, 245 F. Supp. 2d at 57)).

28    /////

1    Ultimately, if "the court determines the agency's course of inquiry was insufficient

2    or inadequate," the court will remand the matter back to the agency for further explanation or

3    additional consideration. *Asarco, Inc. v. U.S. E.P.A.*, 616 F.2d 1153, 1160 (9th Cir. 1980).  Thus,

4    it is not the court's role to second-guess the agency's certification that the record submitted to the

5    court is complete based on plaintiffs' assertions, supposition, or speculation because ultimately,

6    the scope of review of agency action is limited; instead plaintiffs must provide concrete evidence

7    the record is incomplete.  *See id.* ("Consideration of the evidence to determine the correctness or

8    wisdom of the agency's decision is not permitted . . . .").  For example, it is not the court's role to

9    determine whether the DOL "at least should have considered[] these materials," (Mot. to

10   Supplement A.R. 9:6–7, ECF No. 18-1), absent plaintiffs' identification of a factor made relevant

11   by Congress that the DOL failed to consider.  *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

12   *Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983) ("an agency rule would be

13   arbitrary and capricious if the agency has relied on factors which Congress has not intended it to

14   consider").

15   Because plaintiffs have not provided concrete evidence that the denial of the two

16   applications and four grants at issue in this litigation was part of a "broad review" that included

17   all California grant applications, the portion of plaintiffs' motion seeking the admission of pages

18   nine through twenty-six of Exhibit 'K,' and Exhibits 'L' through 'Z' (Decl. Kraft, Ex. K, ECF

19   No.18-13, at 9–26; Exs. L–Z, ECF Nos. 18-14–18-28) is DENIED.

20            2.    Documents Pertaining to Other Section 13(c) Disputes in Other States that
                  Have Attempted Public Pension Reform (Such as Ohio, Michigan,
21                Massachusetts, and New Jersey)

22   Plaintiffs seek admission of documents related to "disputes involving new state

23   laws that impact subjects of collective bargaining" in states other than California.  (Mot. to

24   Supplement A.R. 9:21–10:4, ECF No. 18-1; Decl. Kraft, Ex. BB, ECF No. 18-30.)  Plaintiffs

25   argue that because the briefs submitted to the DOL referred to the decisions in other states, and

26   because the DOL cited to and discussed these prior disputes in the administrative record, these

27   items should be part of the record.  Defendants initially opposed the admission of these

28   documents arguing that these documents were not considered by the agency.  (Opp'n 12:7–28,

1    ECF No. 24.)  Defendants appear to have waffled with respect to one set of documents, as

2    discussed below.

3                   A number of other district courts have addressed the argument plaintiffs advance

4    here: that items the Department of Labor cited or referenced were therefore "indirectly

5    considered" by the agency.  The courts have made two distinctions when documents within the

6    administrative record refer to extra-record materials: (1) whether the agency cited or merely

7    referred to extra-record documents; and (2) whether the citation or reference appears anywhere in

8    the administrative record, or in the actual decisional document.

9                   For example, in *Center for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267,

10   1277 (D. Colo. 2010), the district court rejected the petitioners' argument that "if a document

11   considered by the relevant agency decision maker contains references to other documents, those

12   underlying documents must be included in the record because they were indirectly considered

13   (often referred to as 'consideration through citation')."  The court reasoned that "the

14   consideration through citation argument stretches the chain of indirect causation to its breaking

15   point and cannot be a basis for compelling completion of an Administrative Record."  *Id.; see*

16   *also Grunewald v. Jarvis*, 924 F. Supp. 2d 355, 358 (D.D.C. 2013) ("The[] argument that the

17   Administrative Record must be supplemented with a document referenced in a document . . .

18   stretches the meaning of what is 'before the agency" beyond the breaking point.'); *WildEarth*

19   *Guardians v. Salazar*, No. CV-09-00574-PHX-FJM, 2009 WL 4270039, at *4 (D. Ariz. Nov. 25,

20   2009) ("[W]e find no indication that either the petition or the report relies so heavily on the

21   underlying sources in question that one might fairly be said to have considered the sources merely

22   by considering the documents in which they are cited.").

23

24

25

26

27

28

13

In a separate *WildEarth Guardians* case, *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009) *("WildEarth D.C."),*[5] the court found the plaintiff had not established that even a document mentioned in the agency's decisional document was considered such that it belonged in the administrative record. Plaintiff failed to satisfy "its heavy burden to rebut the presumption of administrative regularity when it show[ed] only that the Secretary failed to include a document that was mentioned—but not substantively cited to—on one occasion in the Secretary's 90–day finding." *Id.* In reaching this conclusion, the court in *WildEarth D.C.* observed, "[a]lthough citation to a document may, as Plaintiff urges, indicate consideration of the contents of the document, the fact that a document is merely mentioned does not lead to the same conclusion." *Id.*

Another court in this district has concluded that, while "an extra-record document that is cited in the agency's actual decision document indicates 'consideration of the contents of the [extra-record] document' by the decision-maker," "a mere reference in the administrative record is insufficient" to indicate the decision-maker considered the contents of an extra-record document. *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1241 (E.D. Cal. 2013) *("Pinnacle Armor")* (internal alteration omitted) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 81 (D.D.C. 2010)). Thus, the court distinguishes a full citation in the "actual decision document" to an extra-record document from a "mere reference" in the record in determining the sufficiency of proof of consideration. *Id.*

These district court decisions are persuasive. The basic lesson to be distilled is that there is not a bright line rule requiring the court to question, or prohibiting the court from questioning, the agency's certification whenever it has omitted a document cited in the record or a

---

[5] *WildEarth D.C.* is based generally on the same factual and procedural background as the Arizona case cited above, but it contests a separate agency decision on a different application to list the prairie dog as an endangered species.

decisional document.  In particular, the court is not constrained to find plaintiffs have met their burden by simply pointing to any extra-record citation in the decisional document.

In enforcing plaintiffs' heavy burden to rebut the presumption of administrative regularity, the court takes a contextual approach.  The more the agency substantively relied upon a document cited in its decision, the more persuasive the argument that the agency directly or indirectly considered the document in making its decision.

Here, plaintiffs have not shown the DOL actually considered decisions from certain other states, namely Ohio, New Jersey and Michigan, in reaching its decisions in this case.  First, it is unclear whether the DOL even indirectly considered its decisions regarding Ohio and New Jersey in deciding the fate of plaintiffs' grant applications, because plaintiffs do not point to places in the actual decision letter in which the DOL referred to either Ohio or New Jersey.  The only place Ohio or New Jersey is referenced is in a letter outside the administrative record from Secretary of Labor Perez to Governor Brown.  Therein, the Secretary said: "Recently, . . . New Jersey [and] Ohio . . . all passed laws that reformed the collective bargaining process, but in each case the transit agency, unions and the state came up with solutions . . . to avoid a conflict with Section 13(c)."  (Decl. Kraft, Ex. I, at 1, ECF No. 18-11.)  As in *Grunewald*, plaintiffs' "argument that the Administrative Record must be supplemented with a document referenced in a document not in the Administrative Record stretches the meaning of what is 'before the agency' beyond the breaking point."  *Grunewald*, 924 F. Supp. 2d at 358.

Second, the DOL cited three documents related to the Michigan transit projects in its decision letter denying Section 13(c) certification to SacRT to support its claim that it has "consistently articulated [its] position in Departmental correspondence to grantees and unions." (A.R. 129–30, ECF No. 9-2, at 77–78.)  The court finds that, as in *WildEarth D.C.*, plaintiffs have not satisfied their "heavy burden to rebut the presumption of administrative regularity" by

showing "only that the [DOL] failed to include . . . document[s] that [were] mentioned—but not substantively cited to—on one occasion in the [DOL]'s . . . finding."  670 F. Supp. 2d at 6.  While the DOL cited to the Michigan documents, the purpose was merely to bolster the DOL's position that it had applied similar reasoning in Michigan, not that it had considered the Michigan documents in making its determination in the instant case.  The reference to the documents is not substantive, and plaintiffs have failed to ". . . provide 'non-speculative grounds for their belief that the agency actually considered the materials.'"  *Pinnacle Armor, Inc.*, 923 F. Supp. 2d at 1241 (internal alteration omitted) (quoting *Marcum*, 751 F. Supp. 2d at 81).  Plaintiffs have not shown the DOL directly or indirectly considered its decisions regarding Ohio, New Jersey, and Michigan transit projects and those states' efforts at public pension reform in deciding the Section 13(c) issues in this case.

        The admissibility of documents related to Massachusetts presents a more difficult question, however.  The DOL discussed Massachusetts at length in its decision letter regarding SacRT's grant application to explain why denying certification to SacRT in "the instant matter is not inconsistent with the Department's recent certification in Massachusetts."  (A.R. 131, ECF No. 9-2, at 79.)  The decision letter explained how the recently enacted Massachusetts legislation, "contrary to the situation here, . . . fully preserved rights and benefits under existing collective bargaining agreements."  (*Id.*)  Therefore, the court finds the DOL "at the very least indirectly considered" the section 13(c) dispute in Massachusetts in reaching the decisions challenged in this case such that the court should also consider these documents in deciding plaintiffs' APA challenge.  *Thompson*, 885 F.2d at 555–56.

        Moreover, at the hearing on February 25, 2014, counsel for defendants conceded the Massachusetts letter had been "put in" the administrative record already:

THE COURT:  . . . Back to the Massachusetts decision.   The Sacramento decision letter does reference that.

MS. ULLMAN: Right.

THE COURT: And say it's not inconsistent.   The Sacramento decision is not inconsistent with Massachusetts.

MS. ULLMAN: Correct.

THE COURT: So doesn't that signal at least indirect reliance on that prior decision?

MS. ULLMAN: *Yes.  So we agreed to put it in.*

THE COURT: All right.  I have no further questions.

(Rep.'s Tr. 26:4–17, ECF No. 33 (emphasis added).)  Yet, in the Joint Report filed after hearing, defendants identified Exhibit BB as one of the specific documents they oppose admitting.  (*Id.* at 3:4–7.)  The court finds that the Massachusetts decision letter is admissible for the additional reason that defendants conceded this point at oral argument.

Therefore, plaintiffs' motion to supplement the administrative record with documents concerning other states' efforts at pension reform is DENIED as to Ohio, New Jersey and Michigan but GRANTED as to Massachusetts.  Specifically, plaintiffs' motion to supplement the record with documents concerning the DOL's recent certification, notwithstanding Massachusetts' enactment of chapter 25 of the Acts of 2009, An Act Modernizing the Transportation System of the Commonwealth, §§ 140, 146, is GRANTED.

            3.      Other Items

                    a.      Sacramento Regional Transit District's Full Funding Grant Agreement

Plaintiffs ask the court to admit the SacRT's Full Funding Grant Agreement. Plaintiffs argue that because the FTA's approval of a Full Funding Grant Agreement is a "commitment to the grantee to supply the federal dollars needed to build the project," the "continued ability of a transit entity to obtain federal funds, maintain and improve its transit infrastructure, and thus support . . . its unionized employees, is a relevant factor."  (Mot. to Supplement A.R. 15:21-25, ECF No. 18-1.)  Plaintiffs argue, therefore, the grant agreement

17

1   should be admitted because it represents a relevant factor the DOL should have considered.  (*Id.*)

2   Defendants oppose, arguing "the decision maker did not have this document at the time of the

3   determination."  (Opp'n 6:13-15, ECF No. 24.)

4              Plaintiffs point to no statutory authority to support their assertion that the DOL

5   should have considered the impact denying Section 13(c) certification would have on the support

6   of unionized employees as a factor made relevant by Congress.  Moreover, the risk that unionized

7   employees will be out of work and therefore without "support" appears speculative because

8   PEPRA appears to exempt unionized transit employees if the Secretary of Labor's decision is

9   upheld.  *See* CAL. GOV'T CODE § 7522.02 (a)(3)(A) ("[PEPRA] shall not apply to a public

10  employee whose interests are protected under Section [13(c)] 5333(b) of Title 49 of the United

11  States Code . . . [i]f a federal district court upholds the determination of the United States

12  Secretary of Labor, or his or her designee, that application of this article precludes him or her

13  from providing a certification under Section [13(c)] 5333(b) of Title 49 of the United States

14  Code").  Thus, federal funds presumably will continue to be supplied if the decision here is

15  upheld, such that the risk that a Section 13(c) denial would undermine the availability of federal

16  funds to "support . . . unionized employees" is negligible.  Moreover, plaintiffs offer no evidence

17  to rebut the DOL's averment that the Funding Grant Agreement was not before the agency when

18  it made its decision.  *See City of Duluth*, ___ F. Supp. 2d at ___, 2013 WL 5422453, at *5

19  (plaintiffs "must identify reasonable, non-speculative grounds for [their] belief that the documents

20  were considered by the agency and not included in the record." (internal quotation marks and

21  alterations omitted)).

22             Therefore, this portion of plaintiffs' motion to supplement the administrative

23  record is DENIED.

24                      b.      May 20, 2013, Email Correspondence Between Sacramento
                                Regional Transit and the Office of Labor–Management Standards.
25

26             Plaintiffs also ask the court to admit a "May 20, 2013[,] email chain between Jane

27  Sutter Starke on behalf of SacRT and Doug Marchant, Ann Comer, and Andrew Auerbach of

28  OLMS . . . ."  (Mot. to Supplement A.R. 7:20–22, ECF No. 18-1; Decl. Kraft, Ex. J, ECF No. 18-

12.)  Defendants "do not oppose adding this email chain based on the contents of the emails, but on the principle that the law does not require administrative records to be replete with unnecessary material just because a private party asserts that such material should be included in the record."  (Opp'n 10:13–16, ECF No. 24.)  Defendants aver that the email chain is "a non-substantive, ministerial communication about who[m] Plaintiffs should address emails to . . . after Mr. Lund left his position."  (*Id.* at 10:18–20.)  Thus, defendants contend, "Plaintiffs' argument that the email is important because it shows Mr. Lund was involved . . . in the decisions at issue is disingenuous . . . because Plaintiffs themselves copied Mr. Lund on their submissions to DOL . . . and most of the electronic communications in the Administrative Record copy Mr. Lund." (*Id.* at 10:21–24.)

Here, review of the email confirms defendants' contention that the email was purely ministerial in nature.  The email in question states: "Dr. Lund has 'graduated' and is no longer Director of [Office of Labor–Management Standards].  I believe that he will stay on in some capacity in DOL, but as of this morning, we no longer have an email address for him." (Decl. Kraft, Ex. J, ECF No. 18-12.)   Because the administrative record need not be supplemented by "every scrap of paper that could or might have been created," but instead only with those items the agency considered in making its decision, *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002), *aff'd*, 433 F.3d 852 (D.C. Cir. 2006), this portion of plaintiffs' motion is DENIED.

4.      Items Defendants Do Not Oppose Admitting

Plaintiffs seek, and defendants do not oppose, the admission of the following documents to the administrative record:

> a.      Exhibit D (ECF No. 18-6), submitted by defendants at ECF No. 22-1, A.R. 1560–62.
>
> b.      Exhibit E (ECF No. 18-7), submitted by defendants at ECF No. 22-1, A.R. 1563–64.
>
> c.      Exhibit H (ECF No. 18-10), submitted by defendants at ECF No. 22-1, A.R. 1565–66.
>
> d.      Exhibit I (ECF No. 18-11), submitted by defendants at ECF No. 22-1, A.R. 1567–68.

e.   Exhibit CC (ECF No. 18-31), submitted by defendants at ECF No. 29-1, A.R. 1593–94.

f.   Exhibit K, at K-1 through K-8 (ECF No. 18-13), submitted by defendants at ECF No. 29-1, A.R. 1585–92.

g.   The documents referenced in the parties' Joint Report as being located at "ECF No. 28-8," (J. Report 2:10-11, ECF No. 34), subject to the parties' clarifying what this exhibit is, as it does not appear to correspond to an item on the court's docket.

Accordingly, these items are ADMITTED to the administrative record.

### 5.   Privilege Log

Plaintiffs request the court order defendants to produce a privilege log.  However, because internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log.  *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009); *see also Cook Inletkeeper*, 400 F. App'x at 240 (denying plaintiffs' "motion to require preparation of a privilege log").  This portion of plaintiffs' motion is therefore DENIED.

### 6.   Motion for Leave to Conduct Discovery

Plaintiffs assert defendants' omission of the documents listed above rebuts the presumption of regularity, warranting discovery.  Plaintiffs also argue allowing discovery is appropriate because the decision maker "may have been affected by partisan considerations," rather than influenced solely by permissible factors under the statute.  (Mot. to Supplement A.R. 12:7–11, ECF No. 18-1.)

"To support a claim of improper political influence on a federal administrative agency, there must be some showing that the political pressure was intended to and did cause the agency's action to be influenced by factors not relevant under the controlling statute."  *Town of Orangetown v. Ruckelshaus*, 740 F.2d 185, 188 (2d Cir. 1984) (citing *Sierra Club v. Costle*, 657 F.2d 298, 409 (D.C. Cir. 1981)).  In the absence of credible allegations of improper ex parte contacts or of improper influence based on impermissible factors, supplementation of the

/////

/////

20

administrative record is not warranted; the mere potential for bias is not enough.  As the Fifth

Circuit has explained:

> Congressional "interference" and "political pressure" are loaded terms.  We need not attempt a portrait of all their sinister possibilities, even if we were able to do so.  We can make plain that the force of logic and ideas is not our concern.  They carry their own force and exert their own pressure.  In this practical sense they are not extraneous.  That a congressman expresses the view that the law ought not sanction the use of fifty-one irrevocable trusts to gain $1.4 million in subsidies is not impermissible political "pressure."  It certainly injects no extraneous factor.  We find no due process right in these preliminary efforts to persuade the government to grant farm subsidies sufficient to exclude the political tugs of the different branches of government, and we see nothing more here.

*DCP Farms v. Yeutter*, 957 F.2d 1183, 1188 (5th Cir. 1992); *see also* 2 CHARLES H. KOCH, JR.,

ADMINISTRATIVE LAW AND PRACTICE § 6:13 (3d ed. 2013) ("Open communication from political

officials cannot be considered improper influence even in the case of formal adjudication." (citing

*Power Auth. of State of N.Y. v. F.E.R.C.*, 743 F.2d 93, 109–10 (2d Cir. 1984))).

Here, only two items that should have been included were omitted from the

administrative record: (1) an October 12, 2012, letter from special counsel for ATU to California

Transit Association, on which officials at the DOL were copied; and (2) documents pertaining to

the Massachusetts' grant approvals.  As discussed above, the agency should have included this

information in the administrative record because there are non-speculative reasons to infer the

agency at least indirectly considered this information.  However, the omission of these two

documents is insufficient to rebut the strong presumption of agency regularity.  Similarly,

plaintiffs' allegations of involvement by so-called "high level" political officials does not rebut

the presumption of regularity either.  *Cf. Costle*, 657 F.2d at 408 ("[W]e do not believe that

Congress intended that the courts convert informal rulemaking into a rarified technocratic

process, unaffected by political considerations or the presence of Presidential power.").

Moreover, plaintiffs have not pointed to concrete evidence of bad faith in this case.

District courts have ordered discovery based on a finding of bad faith, for example, if an agency

decision is "unreasonabl[y] delay[ed]" or if "senior level personnel" have "overruled the

professional staff."  *Tummino v. Von Eschenbach*, 427 F. Supp. 2d 212, 231 (E.D.N.Y. 2006).

1    For example, in *Tummino*, the plaintiffs challenged the Federal Drug Administration's ("the

2    FDA") failure to approve over-the-counter ("OTC") access to the emergency contraceptive drug

3    known as "Plan B." *Id.* at 216.  The FDA delayed responding to the application for OTC access

4    for five years.  *Id.* at 217.  Moreover, soon after the initial application for OTC access was filed in

5    2003, the FDA's Non-Prescription Drug Advisory Committee voted 28-to-0 that the "data

6    demonstrate[d] that Plan B is safe for use in the not-prescription setting."  *Id.* at 218–19.  The

7    plaintiffs produced evidence that "[s]enior management and the Commissioner" of the FDA

8    nonetheless voiced "vocal disapprovals of the Plan B OTC application," and additional reviews of

9    the proposal were ordered.  *Id.* at 220.  From this evidence, the district court concluded a

10   "preliminary showing of 'bad faith or improper behavior' has been made."  *Id.* at 231–32 (citing

11   *Overton Park*, 401 U.S. at 420).  The court reasoned the FDA's behavior "strongly suggest[ed]

12   that the delay [was] a calculated 'filibuster' designed to avoid making a decision subject to

13   judicial review."  *Id.* at 232.  The court also inferred, from the FDA's rejection of its committee's

14   unanimous recommendation that OTC access be approved, that the FDA considered improper

15   factors: "the statements of some senior decisionmakers . . . suggest that the real reason for

16   concern about granting OTC access to adolescents was the prospect that this might increase

17   sexual activity in that age group."  *Id.* at 233.  The court explained that this evidence tended to

18   support the conclusion that "the agency's senior decisionmakers were resting on improper

19   concerns about the morality of adolescent sexual activity," instead of the scientific considerations

20   and recommendations of professional staff.  *Id.*

21          Unlike in *Tummino*, here, plaintiffs have not pointed to evidence that senior level

22   personnel overruled professional staff or attempted to evade judicial review.  They have not

23   pointed to specific statements of senior personnel or the Secretary of Labor himself vocally

24   disapproving of California's pension reform efforts for reasons extraneous to the agency's area of

25   expertise.  *Cf. Tummino*, 427 F. Supp. 2d at 233 ("the Acting Director also [said] later that he

26   signed the not-approvable letter because of his concerns about an increase in 'unsafe sexual

27   activity'").  In short, this case is a far cry from the relatively few cases in which courts have

28   ordered discovery beyond the administrative record.  *See Overton Park*, 401 U.S. at 420 (ordering

1   discovery beyond the administrative record, but noting "inquiry into the mental processes of

2   administrative decisionmakers is usually to be avoided.").

3          Therefore, because plaintiffs have not rebutted the presumption of agency

4   regularity, their motion for leave to conduct discovery is DENIED.

5          7.      General Categories of Materials

6          Plaintiffs clarified at the hearing, and in the Joint Report, that the specific

7   documents they request were intended as "examples of the kind of things that [plaintiffs] believed

8   should be included in a complete record but were not."  (Rep.'s Tr. 7:6–10, ECF No. 33.)  For the

9   reasons set forth above, plaintiffs have not rebutted the presumption of regularity with respect to a

10  broad category of unspecified documents.  Because plaintiffs "must identify the materials

11  allegedly omitted from the record with sufficient specificity, as opposed to merely proffering

12  broad categories of documents and data that are 'likely' to exist as a result of other documents . . .

13  in the administrative record," *City of Duluth*, __ F. Supp. 2d at __, 2013 WL 5422453, at *5, to

14  the extent plaintiffs seek admission of general categories of documents beyond their specific

15  requests, plaintiffs' motion is DENIED.

16  IV.     CONCLUSION

17         For the foregoing reasons, and as set forth above, plaintiffs' motion (ECF No. 18)

18  is GRANTED IN PART and DENIED IN PART.

19         The court HEREBY RESETS defendants' motion (ECF No. 9) for hearing to be

20  held on May 23, 2014, at 10 a.m. in courtroom 3.  To the extent a party wishes to submit a

21  supplemental brief in light of this order, that party's brief shall not exceed ten pages and must be

22  filed no later than May 9, 2014.

23         IT IS SO ORDERED.

24  DATED:  April 24, 2014.

25

26  _____

27  UNITED STATES DISTRICT JUDGE

28