UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, acting by and through the CALIFORNIA DEPARTMENT OF TRANSPORTATION; and SACRAMENTO REGIONAL TRANSIT DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR; and THOMAS E. PEREZ, in his official capacity as SECRETARY OF LABOR,<br><br>Defendants. | No. 2:13-cv-02069-KJM-DAD<br><br><u>ORDER</u> |

   This matter is before the court on defendants' motion to dismiss or in the alternative for summary judgment. ECF No. 9. At hearing on May 29, 2014, Stephen Higgins and Kathleen Kraft appeared for plaintiffs Sacramento Regional Transit District (SacRT) and the California Department of Transportation (CalTrans); Susan Ullman and Ryan Parker appeared for defendants Perez and the Department of Labor (DOL).

   Because plaintiffs have filed a motion for summary judgment to be heard on August 28, 2014, the court declines to address defendant's motion to dismiss or in the alternative for summary judgment on claims one, two and four at this time and will consider those claims in

1

conjunction with plaintiffs' motion. This order addresses only the motion to dismiss the Spending Clause and declaratory judgment claims. After considering the parties' arguments, the court GRANTS the motion, but gives plaintiffs leave to amend their Spending Clause claim.

I.  PROCEDURAL BACKGROUND

Under Section 13(c) of the Urban Mass Transportation Act (UMTA), now codified at 49 U.S.C. § 5333(b), state and local governments seeking federal grants for transit assistance must seek certification from the Department of Labor that the "interests of employees affected by the assistance" are protected by "fair and equitable" arrangements. These employee protective arrangements are called 13(c) agreements.

In their complaint, filed October 4, 2013, plaintiffs SacRT and CalTrans challenge DOL's determination that California's enactment of its Public Employees' Pension Reform Act of 2013 (PEPRA), CAL. GOV'T CODE §§ 7522, *et seq*., prevented 13(c) certification. The complaint raises five claims: (1) DOL's interpretation of PEPRA and Section 13(c) was arbitrary and capricious in violation of the APA; (2) DOL acted in excess of statutory authority in denying 13(c) certification; (3) DOL's refusal to grant 13(c) certification is inconsistent with limits on federal power embodied in the Spending Clause and violates the state's fiscal sovereignty in violation of the Tenth Amendment; (4) DOL prejudged the merits of the issues before it and denied plaintiffs due process in violation of the Administrative Procedure Act (APA); and (5) they are entitled to a declaratory judgment, 28 U.S.C. § 2201. Compl., ECF No. 1 at 15-23.

Defendants filed the motion to dismiss or for summary judgment along with the administrative record on December 9, 2013. ECF Nos. 9, 9-2, 9-3, 9-4, 9-5. On January 9, 2014, they filed a notice of omissions from the administrative record and provided the omitted documents. ECF No. 12.

On January 15, 2014, plaintiffs filed a motion to complete and supplement the administrative record and for limited discovery and on January 26, they filed their opposition to the motion to dismiss. ECF Nos. 18, 21. The court continued the hearing on the motion to dismiss pending the decision on the motion to supplement the record. ECF No. 23.

/////

2

On April 24, 2014, the court granted the motion to supplement in part and denied it in part and gave the parties the opportunity to file supplemental briefs. ECF No. 41.

On May 15, 2014, plaintiffs filed a supplemental brief in opposition to the motion to dismiss and a response to Amalgamated Transit Union's (ATU) amicus brief. ECF Nos. 43, 44. Defendants filed their reply on May 15, 2014.

## II.   FACTUAL ALLEGATIONS

### A.  SacRT

SacRT is a regional transit district formed under California law, CAL. PUB. UTIL. CODE §§ 10200, *et seq*., based in Sacramento. ECF No. 1 ¶ 27. It "relies heavily on federal funding . . . for its capital expenditures." *Id*. ¶ 36. SacRT employs approximately 942 people, 492 of whom are represented by the ATU. *Id*. ¶ 37.

On November 15, 2012, SacRT submitted an application to the Federal Transportation Agency (FTA) for funding of approximately fifty percent of the costs to extend the south corridor (Blue Line) of its light rail system and to construct new stations and a major transit center at Cosumnes River College, planning to use the funds as reimbursement of capital expenditures made before January 1, 2013. *Id*. ¶¶ 36, 43. FTA designated the application as CA-03-0806-03. *Id*. ¶ 43.

On December 12, 2012, DOL notified SacRT and its unions of the Department's intent to certify the pending grant on the basis of the existing 13(c) Agreement unless it received an objection. *Id*. ¶ 44. ATU timely objected, citing the impact of PEPRA on collective bargaining for pensions and other retirement issues, among other things. *Id*. ¶ 46.

As the parties were unable to resolve the issues, each filed its final proposal with DOL on February 12, 2013. *Id*. ¶ 51. On April 18, 2013, DOL declined to issue an interim certification, noting the potential impact of PEPRA. *Id*. ¶ 53. On September 4, 2013, DOL issued its final determination, concluding among other things that "[f]ederal labor policy, rather than state law, defines the substantive meaning of the collective bargaining rights that must be continued for purposes of section 13(c). Where a state statute forecloses negotiation between management and labor over mandatory subjects of collective bargaining, the Secretary cannot

3

certify.  Here, there can be no dispute that pensions are a mandatory subject of bargaining." *Id*., Ex. A at 36.  It concluded that "[m]eaningful collective bargaining does not exist when a state mandates changes in what the parties have previously negotiated, dictates results, or removes relevant issues from consideration"; so, "the effects of PEPRA render it legally impermissible, under current circumstances, for the Department to certify fair and equitable employee protective conditions for grants to SacRTD."[1]  *Id*., Ex. A at 41-42.

### B.  CalTrans

Caltrans is an executive department within the state of California, with headquarters in Sacramento.  ECF No. 1 ¶ 26.  Under California Government Code § 14030, CalTrans has the authority to assist local transit agencies in the development and operation of mass transit and the application for and use of federal funds.  *Id*. ¶ 33.  It ensures the availability of funds for public transit programs by serving as the direct recipient of federal funds under a number of FTA funding programs.  *Id*. ¶ 34.

As part of this assistance, CalTrans sought FTA funds for Monterey-Salinas Transit's (MST) Mobility Management Project, submitting an application on September 20, 2013; this was denominated CA-90-Z117-00.  *Id*. ¶ 35.  DOL denied this application on September 30, 2013, incorporating its denial of MST's earlier grant application for funding to update its trolley system.  *Id*. ¶ 62 & Ex. A at 44-45.  This final determination "contained language and reasoning nearly identical to that in the Department's final determination for SacRTD."  *Id*. ¶ 62.

In addition to these grants, DOL has failed to certify most grants to California transit agencies, resulting in over $1 billion of funding withheld.  *Id*. ¶ 63.

/////
/////
/////
/////
/////

---

[1]  SacRTD is an alternative shorthand for SacRT.

III.     LEGAL BACKGROUND

Section 13(c) of the Urban Mass Transportation Act of 1964, 49 U.S.C. § 5333(b) (UMTA), provides in pertinent part:

> (b) Employee protective arrangements.--(1) As a condition of financial assistance . . . the interests of employees affected by the assistance shall be protected under arrangements the Secretary of Labor concludes are fair and equitable. The agreement granting the assistance . . . shall specify the arrangements.
>
> (2) Arrangements under this subsection shall include provisions that may be necessary for—
>
> (A) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise;
>
> (B) the continuation of collective bargaining rights . . . .

49 U.S.C. § 5333(b)(1), (2)(A), (B).

In 2012, California's Governor signed the PEPRA into law "to reform California's public employee pension systems and to bring the staggering cost of funding such systems under fiscal control." ECF No. 1 ¶ 6. Under PEPRA, employees hired after January 1, 2013 ("new employees") must contribute at least 50 percent of the normal costs of their defined benefit plan. PEPRA establishes a cap on the amount of compensation that can be used to calculate a retirement benefit for new and "classic" employees, to use the parties' term of art. *See* CAL. GOV'T CODE §§ 7522.30(a), 7522.10(c).

IV.     ANALYSIS

A.  Standard for a Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court must construe the complaint in the light most favorable to the plaintiff and accept as true the factual allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001). A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

B.  Spending Clause Arguments

Plaintiffs allege that DOL's interpretation and application of Section 13(c) has coerced California to change PEPRA even though regulation of public pensions is the state's prerogative. ECF No. 1 ¶¶ 92-93. They also allege that by compelling them to change the pension reform legislation or forgo over $1 billion of federal transit grants, the agency has

1  undermined California's legislative and fiscal sovereignty. *Id*. ¶ 94.  They contend that DOL's
2  interpretation of section 13(c) conditions the receipt of federal funds on ambiguous requirements
3  that do not directly relate to the objectives of the grant program. *Id*. ¶ 95.  In plaintiffs' view, this
4  coercion exceeds Congress's power under the Spending Clause and violates the Tenth
5  Amendment by invading California's fiscal sovereignty. *Id*. ¶ 96.

6  Defendants argue similar claims were rejected in *City of Macon v. Marshall*, in
7  which a district court concluded the UMTA only induces but does not coerce transit agencies to
8  maintain workers' collective bargaining rights.  439 F. Supp. 1209 (M.D. Ga. 1977).  They
9  contend plaintiffs' claim of ambiguity is puzzling in light of plaintiffs' long-standing compliance
10 with section 13(c) as part of the process for securing federal transportation funds and that the
11 protection of collective bargaining rights at the core of section 13(c) relates directly to how
12 federal grant money is spent.  ECF No. 9-1 at 22-23.

13 Plaintiffs counter that DOL's interpretation of section 13(c) in fact conditions the
14 receipt of funds on ambiguous requirements:  although California has accepted federal funds in
15 the past, neither section 13(c) itself nor DOL's prior decisions clearly prevent a state's
16 modification of its public pension laws.  DOL's interpretation now retroactively changes the
17 "contract" in violation of the Spending Clause.  ECF No. 21 at 22.  Plaintiffs also argue that the
18 loss of $1 billion in transit funds would have a negative impact not only on transit systems'
19 services but also on California's transportation network and air quality goals, rendering the
20 condition coercive.  They contend that the conditions do not relate to the grants because the
21 purpose of the UMTA is solely to assist in the development of mass transit and so the
22 requirements relating to collective bargaining are impermissible fiscal "strings" that violate the
23 Spending Clause.  *Id*. at 25.

24 Amicus ATU argues that plaintiffs' claims that the DOL's interpretation of section
25 13(c) invades California's fiscal sovereignty are not supported by their cited authority and suggest
26 that California may retain its sovereignty by rejecting federal transit funds and paying for
27 upgrades through the state's savings from pension reform.  ECF No. 25 at 21.

28 In reply, defendants contend plaintiffs' claims about ambiguity and lack of relation

7

1  to the mass transit grants are only conclusorily pleaded.  ECF No. 45 at 8.  They also argue that
2  plaintiffs' claim that California will lose $1 billion in transit funds is insufficient by itself to
3  establish coercion.  ECF No. 45 at 9.

    C.  Spending Clause Analyzed

"The Spending Clause of the Federal Constitution grants Congress the power '[t]o lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." *Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc.*, ___ U.S. ___, 133 S.Ct. 2321, 2327 (2013) (quoting U. S. CONST., ART. I, § 8, CL. 1).  Although the federal government's authority is broad, the Spending Clause does impose limits:

> First, the exercise of the spending power must be in the pursuit of the general welfare.  Second, the conditions on receipt of federal funds must be reasonably related to the articulated goal.  Third, Congress' intent to condition funds on a particular action must be authoritative and unambiguous, "enab[ing] the States to exercise their choice knowingly, cognizant of the consequences of their participation."  Fourth, the federal legislation may be invalid if an independent constitutional provision bars Congressional actions.  The independent constitutional bar rule "stands for the unexceptionable proposition that the power may not be used to induce the States to engage in activities that would themselves be unconstitutional.

*Nevada v. Skinner*, 884 F.2d 445, 447 (9th Cir. 1989) (citations omitted).  In *South Dakota v. Dole*, the Supreme Court suggested another limit on spending authority: "in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'"  483 U.S. 203, 211 (1987) (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)).  In *Dole*, the Court found that Congress's conditioning of the receipt of highway funds on South Dakota's raising its drinking age to 21 did not reach the point of compulsion when the penalty for refusing would be the loss of only five percent of highway grant funds.  *Id*. at 211.

In *Skinner*, the Ninth Circuit questioned the viability of the coercion theory, noting it "has been much discussed but infrequently applied in federal case law and never in favor of the challenging party"; the Circuit suggested this result has flowed from the "elusiveness" of the theory.  884 F.3d at 448; *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411

8

1  F.3d 474, 493 (4th Cir. 2005) ("Although there might be a federal funding condition that is
2  unconstitutionally coercive, neither the Supreme Court nor any federal court of appeals has yet
3  identified one.").

4  More recently, however, the Supreme Court upheld a Spending Clause challenge
5  to the Medicaid expansion portion of the Affordable Care Act.  In *National Federation of*
6  *Independent Business v. Sibelius (NFIB)*, the Court found the federal government's financial
7  inducement was coercive when Congress threatened to withhold Medicaid funding, in light of the
8  fact that Medicaid spending "accounts for over 20 percent of the average State's total budget."
9  ___ U.S. ___, 132 S.Ct. 2566, 2604 (2012).  It contrasted *Dole*'s "'relatively mild
10 encouragement'" to the threatened loss of all of a State's Medicaid funding, which it described as
11 "a gun to the head."  *Id*. (quoting *Dole*, 483 U.S. at 211).  The Court continued:

> It is easy to see how the *Dole* Court could conclude that the threatened loss of less than half of one percent of South Dakota's budget left that State with a 'prerogative' to reject Congress's desired policy, "not merely in theory but in fact."  The threatened loss of over 10 percent of a State's overall budget, in contrast, is economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion.

16 *NFIB*, 132 S.Ct. at 2604-05 (citation omitted).

17 Plaintiffs have pled they will lose over $1 billion in transit funds if they do not
18 exempt transit workers from PEPRA.  ECF No. 1 ¶ 63.  While a "billion here, a billion there"
19 may be real money, with apologies to Senator Everett Dirksen, the court cannot evaluate whether
20 plaintiffs have adequately pled the underlying coercive effect of DOL's interpretation of section
21 13(c) given its intersection with PEPRA, without more information about the relationship
22 between the loss of funds and the total state transit budget or total state budget.  Moreover, to the
23 extent plaintiffs are alleging DOL's interpretation impinges on the state's fiscal sovereignty, the
24 complaint does not provide sufficient information for the court to determine whether the
25 allegation states a claim.  *See Skinner*, 884 F.3d at 448 ("The purpose of the coercion test is to
26 protect state sovereignty from federal incursions.").

27 To the extent plaintiffs' Spending Clause claim is based on ambiguity and the
28 imperfect relationship between the requirements of section 13(c) and the UMTA, these claims are

similarly inadequately pleaded. As defendants point out, the claims are addressed in a single paragraph, which states in conclusory fashion that DOL's interpretation of section 13(c) "operates to condition the receipt of federal funds on ambiguous requirements, and the conditions imposed do not directly relate to the objectives of the federal grant program." ECF No. 1 ¶ 95. Although plaintiffs have expanded on these claims in their points and authorities, the information they argue is not part of the complaint.

Moreover, it is not clear whether plaintiffs are raising a separate Tenth Amendment challenge to DOL's interpretation or whether their reference to the Tenth Amendment is part of their claim that the interpretation's coercive impact runs afoul of the Spending Clause. Plaintiffs will be given leave to amend the substance of their Spending Clause claim, if they are able, and to clarify whether the Tenth Amendment claim is separate.

### C. Declaratory Judgment

Plaintiffs allege "[t]here is an actual controversy of sufficient immediacy and concreteness relating to the legal rights and duties of Plaintiffs and their legal relations with the Department . . . " and ask for a judgment clarifying the legal relations of the parties. *Id*. ¶¶ 111-112. Defendants argue that the Declaratory Judgment Act does not provide a basis for a separate claim nor does it confer subject matter jurisdiction. ECF No. 9-1 at 24. Plaintiffs agree the Declaratory Judgment Act creates a remedy, but say courts have approved claims based on the Act. ECF No. 21 at 25.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a court may declare the rights of an interested party who seeks the declaration, whether or not further relief could be sought. A district court has the discretion to hear a declaratory judgment claim. See *Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995). "The Declaratory Judgment Act gives the Court the authority to declare the rights and legal relations of interested parties, but not a duty to do so." *Leadsinger, Inc. v. BMG Music Pub*., 512 F.3d 522, 533 (9th Cir.2008). When the relief sought "will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate proceedings and afford relief from uncertainty and controversy faced by the parties," a court need not grant declaratory relief. *United States v. State of Washington*, 759 F.2d 1353, 1357

(9th Cir.1985).  In this case, the relief plaintiffs seek under the Declaratory Judgment Act mirrors the relief they seek in their other claims.  This claim is dismissed without leave to amend.

        IT IS THEREFORE ORDERED that:

        1. Defendants' motion to dismiss plaintiffs' Spending Clause and Declaratory Judgment Act claims is granted; and

        2. Plaintiffs' amended complaint to the extent allowed above is due within fourteen days of the date of this order.

DATED:  July 22, 2014.

_____
UNITED STATES DISTRICT JUDGE