BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
BENJAMIN B. WAGNER
United States Attorney
JUDRY L. SUBAR
Assistant Director
SUSAN K. ULLMAN
Senior Trial Counsel
RYAN B. PARKER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Tel: (202) 514-4336; Fax: (202) 616-8202

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR, *et al.*,<br><br>Defendants. | Case No. 2:13-CV-02069-KJM-DAD<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF** |

## INTRODUCTION

The Department of Labor (DOL) determined that it could not certify a grant sought by the State of California because California had enacted legislation that interfered with the "preservation of rights, privileges, and benefits . . . under existing collective bargaining agreements" in contravention of what is referred to as § 13(c)(1) of the Urban Mass Transportation Act of 1964 (UMTA), 49 U.S.C. § 5333(b)(2)(A). Plaintiff filed a First Amended Supplemental Complaint adding a claim challenging DOL's determination that it could not certify the grant request from the State of California to benefit Monterey-Salinas Transit (MST) because California had not preserved the benefits of "classic employees." *See* ECF 122. The parties provided supplemental briefing on California's additional claim. *See* ECF 123, 124. DOL submits this brief in response to California's Supplemental Brief (ECF 124, Pl. Supp.), and in further support of its motion to dismiss, or, in the alternative, for summary judgment.

## ARGUMENT

### DOL APPROPRIATELY EXERCISED ITS DISCRETION IN DETERMINING THAT THE *RIGHTS, PRIVILEGES AND BENEFITS* OF "CLASSIC" EMPLOYEES UNDER THE EXISTING BARGAINING AGREEMENT ARE NOT PRESERVED

Under the UMTA, DOL must determine that "fair and equitable" arrangements are in place to preserve and continue the "rights, privileges, and benefits . . . under existing collective bargaining agreements," 49 U.S.C. § 5333(b)(1), (2)(A), before the Federal Transit Administration may issue transportation grants to state and local transportation agencies. As this Court knows, DOL determined that it could not certify a grant the State of California sought for MST's Mobility Management Project because the requisite fair and equitable arrangements were not in place. DOL's decision was predicated in part on the agency's determination that California's enactment of the California Public Employees' Pension Reform Act of 2013 (PEPRA) interferes with the "rights, privileges, and benefits" "under existing collective bargaining agreements" for classic employees. *Id.* Defendants have submitted multiple briefs in support of their motion to dismiss the complaint or in the alternative for summary judgment (*see, e.g.*, ECF Nos. 107, 99-1, 123), and will not repeat the facts and arguments set forth therein in support of the position that DOL's determination that the requirements of §§ 13(c)(1), (2) are not

met, is neither arbitrary and capricious, nor an abuse of discretion, nor inconsistent with law. Instead, in this filing DOL will identify and respond to the points California raised in its Supplemental Brief, noting where California has made assertions that are not in accordance with the UMTA and its purpose, relevant case law, the administrative record, or Plaintiffs' burden of proof.

DOL will focus on "airtime" because the central issues are undisputed: the definition of airtime, *see* Order at 3-4 n.2, August 22, 2016, ECF 121; that PEPRA limits the counting of airtime for the calculation of retirement benefits, *id.* at 3; that MST "classic" employees had the option to purchase airtime under the "existing" collective bargaining agreement (CBA), Pl. Supp. at 2 n.5, 2 n.6; and that PEPRA affected the ability of MST classic employees to purchase airtime throughout a period of the existing CBA, *id.* n. 6.

**1.** Plaintiff California's argument is premised on a misstatement of the law. Plaintiff states that "13(c)(1) protects the *substantive pension rights* set forth in the 'existing' [CBA]." Pl. Supp. at 1 (emphasis added). Plaintiff's attempt to limit the UMTA is misplaced. The UMTA is a broad statute that protects "the interests of employees affected by the assistance," including, but not limited to, those set forth in § 13(c)(1): "Arrangements . . . that may be necessary for—(A) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing [CBAs] or otherwise." 49 U.S.C. § 5333(b). Thus, § 13(c)(1) is not limited to "pension rights," much less "substantive pension rights" (whatever that may be), but preserves all types of rights, privileges and benefits in a CBA.

**2.** California attempts to avoid the import of federal law by re-defining airtime as "the option to *enhance* one's pension benefits," and arguing that airtime is a "benefit *enhancement* option, it is not a pension right." Pl. Supp. at 2-3. Again, the UMTA is not limited to pension *rights*. The UMTA preserves benefits in a CBA, including pension benefits, and California acknowledges that airtime enhances an employee's pension *benefits*. The voluntary nature of airtime – employees could choose to enhance their pensions but were not required to do so – does not change the fact that it was a benefit provided to employees under the CBA and is, therefore, protected under the UMTA.

California's attempt to re-define airtime ignores that PEPRA called airtime "nonqualified service credit," and defined it by referring to the Internal Revenue Code. *See* Cal. Gov't Code § 7522.46(a). The Internal Revenue Code, in turn, states that, "the term 'nonqualified service credit' means permissive service credit . . . ." or "nonqualified service credit," 26 U.S.C. § 415(n)(3)(C). Thus, both statutes refer to airtime as a service credit in an acknowledgment that airtime can have a direct and potentially substantial effect on an employee's pension benefit.

This Court described the impact of PEPRA's limitation on airtime for classic employees on retirement *benefits*. The Court explained that, "PEPRA also makes changes to the way retirement benefits are calculated . . . . PEPRA sets specific limits on the amount of the employee's compensation that can be used in that calculation: Public employees may no longer purchase 'nonqualified service credit' or 'airtime." Order at 3 (citation omitted). The Court then explained airtime and its importance in determining retirement benefits:

> Generally speaking, "nonqualified service time" or "airtime" is made up of time credits an employee may purchase to increase his or her retirement benefits. These credits add fictitious years to the true number of years the employee worked before retirement. *See* 26 U.S.C. 415(n). The additional years are significant because retirement benefits are often calculated by multiplying a percentage of the employee's pre-retirement compensation by the number of years that the employee worked. If an employee can artificially add years to her tenure, she can add to her retirement benefits.

*Id.* at 3-4 n.2. In sum, the UMTA protects "rights, privileges and benefits" and the Court has already recognized the effect of airtime on retirement benefits. Airtime is, therefore, clearly a benefit protected under the UMTA.

**3.** Plaintiff California argues that § 13(c)(1) certification can only be denied if PEPRA "'substantially reduces' pension rights and benefits under an 'existing' CBA." Pl. Supp. at 2. This argument conflicts with the plain language of the UMTA, which requires the preservation of "rights, privileges, and benefits." The UMTA does not limit § 13(c)(1)'s protections only to situations where pension rights and benefits are "substantially reduced."

Plaintiff appears to base its "substantially reduces" requirement on the Court's earlier decision regarding § 13(c)(2). *See* Pl. Supp. at 2 (citing ECF 100). Plaintiff ignores that in the relevant Order, the Court held *with respect to 13(c)(2) only* that "[i]t is not possible to conclude

on this record that PEPRA substantially clashes with federal labor policy." Order at 45. The Court did not mention, much less use, a "substantially reduces" test in its § 13(c)(1) analysis. *Id.* at 45-51. In short, neither the UMTA nor case law establishes a "substantially reduces pension rights and benefits" test for analyzing whether § 13(c)(1) protections have been met.

**4.** Even if "substantially reduces" were the test, there is no basis for assuming that each reduction must be separately analyzed to determine if it alone "substantially reduces" the rights, privileges, and benefits in a CBA. To the contrary, the language of the UMTA makes consideration of the aggregate impact appropriate: "the *interests of employees affected* by the assistance shall be protected," and those protections "shall *include* provisions that may be necessary for – the preservation of rights, privileges, *and* benefits." 49 U.S.C. § 5333(b)(1), (2)(A) (emphasis added). Indeed, there is no textual basis for requiring separate consideration of the impacts under § 13(c)(1) and § 13(c)(2).

**5.** In addition, if "substantially reduces" were the appropriate test, and even if each reduction were analyzed separately, the loss of the rights, privileges, and benefits of airtime is a substantial reduction. California does not dispute that, with respect to airtime, PEPRA has a "real effect on MST's classic employees." Pl. Supp. at 2 n.6. However, California would characterize that "real effect" as only being a change to the "timing of their election to purchase airtime," and would have the Court dismiss that "real effect' as "unquestionably, a *de minimus* one." *Id.* Plaintiff's bald assertions are inconsistent with the record in this case and the Court's previous decisions. As set forth above, this Court has already discussed the importance of "airtime" and used the term "significant" in describing how it can affect retirement benefits. Order at 3 n.2; *see also* http://www.bloomberg.com/news/articles/2013-01-31/california-workers-rush-calpers-ahead-of-air-time-ban ("The California Public Employees' Retirement System was flooded last month [December 2012] with applications by government workers seeking to buy additional years of service that can be counted toward their pension when they retire.").

Part of California's "unquestionably *de minimus*" argument seems to be that PEPRA prohibited the purchase of airtime beginning January 1, 2013, and the relevant CBA expired on

September 30, 2013. Pl. Supp. at 2 n.5. But the CBA was only in place for 36 months, *id.*, and removing a significant pension right like airtime for a quarter of the life of the agreement is certainly not a *de minimus* change.

**6.** California also repeats its argument that DOL's discussion of PEPRA's effect on classic employees is a "three-sentence finding," that provides "no reasoning whatsoever," Pl. Supp. at 1, 4 n.8. But California ignores the structure of DOL's 2015 decision (ECF 88-4) and focuses only on DOL's final conclusion (*id.* at 21). Earlier in the decision, DOL included a detailed discussion of PEPRA's effects on existing employees, of the language and structure and legislative history of § 13(c), and of the prevailing law when PEPRA was enacted. *See* ECF 88-4 at 8-13. DOL also explicitly incorporates the discussion from its 2013 determination (which can be found at AR 205). *See* ECF 88-4 at 3. As DOL sufficiently considered PEPRA's effect on classic employees over the course of its two determinations, California's claim to the contrary should be rejected.

**7.** Finally, California requests wide-ranging injunctive relief "preventing the Department from once again denying 13(c) certifications because of PEPRA." Pl. Supp. at 1. There are only two denials of grant certifications that are being challenged in this case. The parties have made transit entity-specific arguments about the relevant CBAs, and the Court has relied upon specific details of the CBAs in reaching its decisions. *See, e.g.*, Order at 40. The "Supreme Court has cautioned that 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs' before the court." *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 664 (9th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). "This rule applies with special force where there is no class certification." *Id.* As this case is not a class action, there is no basis for a remedy that reaches beyond the two administrative decisions that are before the Court.

## CONCLUSION

For the reasons set forth above and in Defendants' previous briefs, the Court should uphold DOL's decision not to certify Plaintiff California's grant application because of PEPRA's effects on MST's classic employees.

Dated: October 25, 2016

/s/ *Ryan B. Parker*
SUSAN K. ULLMAN
RYAN B. PARKER

*Attorneys for Defendants*

DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF 6